[No. B193654. Second Dist., Div. Eight. Sept. 11, 2007.]

THE PEOPLE, Plaintiff and Respondent, v.
DWIGHT PERRY, Defendant and Appellant.

■■■■■■
■■■■■■■■■■■■■■

**COUNSEL**

Stephen M. Hinkle, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Susan D. Martynec and Ellen Birnbaum Kehr, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**BOLAND, J.—**

## INTRODUCTION

Appellant Dwight Perry challenges his second degree robbery and vehicular burglary convictions on the grounds that the evidence was insufficient and Penal Code section 654 precludes punishment on both counts. We conclude substantial evidence supports appellant's convictions. Penal Code section 654 requires a stay of the sentence for vehicular burglary.

## BACKGROUND AND PROCEDURAL HISTORY

Juan Cruz returned to his car, which had been locked with closed windows, and discovered appellant inside it. He shouted at appellant, who jumped out holding Cruz's car stereo in one hand and a screwdriver or ice pick in the other hand. As appellant ran from the car, Cruz chased him, with assistance from a passing driver, Juan Linan. When Cruz tackled appellant, he no longer had either the stereo or the screwdriver/ice pick.

A jury convicted appellant of second degree robbery and second degree vehicular burglary. It acquitted appellant of assault with a deadly weapon, but found he personally used a deadly or dangerous weapon in the commission of the robbery. Appellant admitted he had served a prior prison sentence within the scope of Penal Code section 667.5, subdivision (b). The court sentenced appellant to four years in prison.

## DISCUSSION

1. *Substantial evidence supports appellant's conviction.*

Appellant contends the evidence of identity was insufficient to support his conviction.

To resolve this issue, we review the whole record in the light most favorable to the judgment to decide whether substantial evidence supports the conviction, so that a reasonable jury could find guilt beyond a reasonable doubt. (*People v. Ceja* (1993) 4 Cal.4th 1134, 1138 [17 Cal.Rptr.2d 375, 847 P.2d 55].)

Cruz testified he parked his car on the street and went into a video store. About 15 minutes later, he checked on his car and found appellant inside it. He shouted at appellant, who jumped out and turned to face Cruz at a distance of about four feet. Appellant had Cruz's car stereo in one hand and a pointy object like a screwdriver or ice pick in the other hand. Appellant adopted a "fighting stance" and faced Cruz for 10 to 15 seconds before running away with the stereo and screwdriver/ice pick.

Cruz chased appellant and caught up with him. They stood face-to-face, four to five feet apart, and appellant again adopted a "fighting stance." Appellant still had the stereo and screwdriver/ice pick. He mumbled something and ran away.

Linan was driving in the area when he saw appellant carrying a car stereo and screwdriver as Cruz chased him. Linan stopped and let Cruz into his car, and they pursued appellant. Cruz got out of Linan's car and confronted appellant. Cruz stood face-to-face with appellant for four to five minutes. They were four to five feet apart, and appellant still had the stereo and screwdriver/ice pick. Appellant again adopted a fighting stance. He eventually ran away.

Cruz and Linan chased appellant again and caught him near a mailbox near the corner of Compton and Nadeau. Appellant no longer had either Cruz's stereo or the screwdriver/ice pick. Cruz tackled appellant and held him until sheriff's deputies arrived.

Cruz testified he never lost sight of appellant during the chase,[1] but did not see what appellant did with his stereo or the screwdriver/ice pick. He told the police appellant might have put them in the nearby mailbox.

Linan testified that he lost sight of appellant for five to 10 seconds, and then saw him hiding behind some small trees. Appellant then ran. He still had the stereo and screwdriver with him at that time. Linan saw appellant put the stereo and screwdriver into the mailbox near the corner of Compton and Nadeau. Linan identified appellant was the man he saw running with the stereo and screwdriver.

---

[1] Cruz told Detective Jason Schreiner he lost sight of appellant for a couple of seconds when he first spoke to Linan and got into his truck.

Detective Jason Schreiner testified he and a postal inspector opened the mailbox near the corner of Compton and Nadeau about 10:30 to 11:00 a.m. the day after the crimes. They did not find a car stereo, screwdriver, or ice pick inside of it. Some mail was found inside of the box, but Schreiner did not know if its contents had been collected between the time of the crimes and the time of his inspection. The post office did not report finding a stereo, screwdriver or ice pick. Schreiner believed the mouth of the mailbox was not wide enough for a car stereo, unless it was less than three inches thick.

Substantial evidence supported appellant's convictions. Although Cruz's testimony contained some minor inconsistencies, Cruz and Linan both identified appellant. Cruz, in particular, had ample opportunity to observe appellant during his several face-to-face confrontations, particularly the four-to-five-minute episode. Although appellant may have been out of sight briefly, he still had the stereo and screwdriver/ice pick when Cruz and Linan found him again. The fate of the stereo and screwdriver/ice pick remains a mystery, but the record provides ample support for the verdict given the victim and eyewitness identifications and their continuous pursuit, during which appellant's identity as the culprit was confirmed by his possession of the stereo and implement.

2. *Penal Code section 654 requires a stay of the sentence on appellant's vehicular burglary conviction.*

Over appellant's objection based on Penal Code section 654, the trial court sentenced appellant to concurrent terms for robbery (count 1) and vehicular burglary (count 3). The court explained that the burglary was complete when appellant entered Cruz's car with the requisite intent. Appellant contends the term on his burglary conviction "must be stayed because the entire episode was part of one continuous transaction and incident to one objective and the offenses were committed so close in time as to be an indivisible course of conduct precluding a separate term on count three."

Penal Code section 654 prohibits punishment for two crimes arising from a single indivisible course of conduct. (*People v. Latimer* (1993) 5 Cal.4th 1203, 1208 [23 Cal.Rptr.2d 144, 858 P.2d 611].) If all of the crimes were merely incidental to, or were the means of accomplishing or facilitating one objective, a defendant may be punished only once. (*Ibid.*) If, however, a defendant had several independent criminal objectives, he may be punished for each crime committed in pursuit of each objective, even though the crimes shared common acts or were parts of an otherwise indivisible course of conduct. (*People v. Harrison* (1989) 48 Cal.3d 321, 335 [256 Cal.Rptr. 401, 768 P.2d 1078].) The defendant's intent and objective are factual questions for the trial court, and we will uphold its ruling on these matters if it is supported by substantial evidence. (*People v. Coleman* (1989) 48 Cal.3d 112, 162 [255 Cal.Rptr. 813, 768 P.2d 32].)

It is undisputed that the burglary and robbery were parts of a single continuous course of conduct. The determinative issue is whether appellant had multiple, independent objectives.

The application of Penal Code section 654 appears somewhat inconsistent in cases in which property is taken in a burglary and ensuing efforts to thwart the theft are met with violence, forceful resistance, or threats of violence. There nonetheless appears to be a general distinction between cases addressing convictions of burglary and robbery and cases addressing burglary and assault convictions. (See, e.g., *People v. Guzman* (1996) 45 Cal.App.4th 1023 [53 Cal.Rptr.2d 67] [section 654 barred punishment for both burglary in which motorcycle was taken from garage and robbery in which force was used against pursuing victim attempting to stop culprits]; *People v. Le* (2006) 136 Cal.App.4th 925 [39 Cal.Rptr.3d 146] [People conceded, and court agreed, section 654 barred punishment for both burglary in which goods were shoplifted from drugstore and force used against store employees attempting to prevent thieves from leaving with goods]; *People v. Vidaurri* (1980) 103 Cal.App.3d 450 [163 Cal.Rptr. 57] [multiple punishment permissible for burglary in which goods stolen from store and numerous assaults with a deadly weapon upon store employees attempting to prevent thieves from leaving with goods and innocent bystanders]; *People v. McGahuey* (1981) 121 Cal.App.3d 524 [175 Cal.Rptr. 479] [multiple punishment permissible for burglary in which money and hatchet stolen from home and assault with a deadly weapon in which defendant threw hatchet through window from outside house at victim who was calling police].)

Although each case necessarily turns upon its own particular facts, the apparent distinction between the cases cited in the prior paragraph may be explained by the difference between the intent necessarily reflected in convictions of robbery and assault. Assault reflects an intent to perform an act that, by its nature, will probably and directly result in the application of physical force to another person. (*People v. Williams* (2001) 26 Cal.4th 779, 790 [111 Cal.Rptr.2d 114, 29 P.3d 197].) Robbery, while involving the use of force or fear, reflects an intent to deprive the victim of property. Accordingly, a conviction of assault committed during an escape with property taken during a burglary reflects, in essence, an intent to apply, attempt to apply, or threaten to apply force to a person, rather an intent to steal property. The objective of such an assault generally will be to deter, interrupt or put a stop to a pursuit or other effort to capture the defendant and any property taken during the burglary. However, if property is taken during a burglary and a robbery pertaining to the same property is committed during the escape, the objective is still essentially to steal the property. Admittedly, an additional objective of

preventing the victim or another person from taking back the property generally will exist, but may be incidental to, rather than independent of, the objective of stealing the property. At some point, the degree of force or violence used or threatened may evince "a different and a more sinister goal than mere successful commission of the original crime," i.e., an independent objective warranting multiple punishment. (*People v. Nguyen* (1988) 204 Cal.App.3d 181, 191 [251 Cal.Rptr. 40] implicitly overruled on another ground in *People v. King* (1993) 5 Cal.4th 59 [19 Cal.Rptr.2d 233, 851 P.2d 27].)

■ Appellant's objective in committing the burglary was apparently the theft of the stereo from Cruz's car. The robbery was committed when Cruz confronted appellant at the car and appellant adopted a "fighting stance" while holding the screwdriver/ice pick. (*People v. Estes* (1983) 147 Cal.App.3d 23 [28, 194 Cal.Rptr. 909].) The objective in committing the robbery was also the theft of the car stereo. Although the robbery entailed a different type of action, i.e., the implied threat to use the screwdriver or ice pick, the underlying objective was necessarily identical: to steal Cruz's car stereo. It is reasonable to conclude that appellant also wanted to evade capture, but escaping was merely incidental to, or the means of completing the accomplishment of the objective of taking the stereo. Accordingly, it cannot be said that appellant acted with multiple independent objectives in committing the burglary and the robbery. Unlike *People v. Vidaurri, supra,* 103 Cal.App.3d 450, upon which respondent relies, appellant did not use similar extreme threats of violence as to reflect an independent objective of applying force to Cruz or harming him. He merely adopted an aggressive posture and showed the screwdriver or pick he held. The evidence supports only an objective of stealing a stereo, which was the same objective underlying the burglary.

■ The trial court erred by focusing on the completion of the burglary. The moment at which a defendant committed all of the elements of an offense is immaterial in applying Penal Code section 654. Similarly, whether an offense might be deemed ongoing for other purposes, such as application of the felony-murder rule, is irrelevant in this context. (*People v. Nguyen, supra,* 204 Cal.App.3d at p. 193.) The court must instead consider whether the offenses were part of an indivisible course of conduct, whether the defendant acted according to a single objective or multiple independent objectives, and whether the defendant committed violent crimes against different victims. No evidence supports a conclusion that appellant acted according to independent criminal objectives. Accordingly, Penal Code section 654 requires a stay of the sentence on count 3.

## DISPOSITION

The sentence on count 3 (vehicular burglary) is stayed under Penal Code section 654. In all other respects, the judgment is affirmed.

Cooper, P. J., and Rubin, J., concurred.